A07A1484. WINFREY v. THE STATE.
(649 SE2d 561)

BLACKBURN, Presiding Judge.

Following a jury trial and the denial of his motion for new trial, Otis Winfrey appeals his convictions for kidnapping with bodily injury,[1] aggravated assault,[2] possession of a firearm while committing a crime,[3] and possession of a firearm by a convicted felon,[4] all of which arose out of acts he committed against his ex-girlfriend late one night. Challenging the sufficiency of the evidence on the kidnapping and assault charges, he further claims that the court erred in admitting certain evidence, in failing to charge the jury on certain matters, and in finding that he had not carried his burden of showing ineffective assistance of counsel. Holding the evidence was sufficient and discerning no error, we affirm.

1. When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of

---

[1] OCGA § 16-5-40.
[2] OCGA § 16-5-21 (a) (2).
[3] OCGA § 16-11-106 (b) (1).
[4] OCGA § 16-11-131 (b).

innocence. *Short v. State.*[5] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[6] We focus here only on the convictions that Winfrey challenges on appeal as lacking evidence (the kidnapping with bodily injury and aggravated assault convictions).

Viewed in this light, the evidence shows that late one night, Winfrey returned to his ex-girlfriend a vehicle they shared and then asked that she take him home. Driving the car with her in the passenger seat, Winfrey did not go to his home but pulled out a gun and, pointing it at her face, announced he was going to kill her for having broken up with him. Begging for her life as he drove toward a remote area, the victim loosened her seat belt and, when they approached an oncoming truck, jumped out, screaming for attention. She heard a shot as she fell. Despite her injuries from the fall, she arose and ran toward the now-stopped truck, only to hear several more gunshots from Winfrey, one of which pierced her footwear and struck her toe. She fell again, this time striking her forehead, which rendered her unconscious. The truck drove away, and the driver called the police. A second vehicle arrived, the driver of which witnessed Winfrey drag the unmoving victim into the back seat of his car and escape. This driver also called police, giving them the tag number of the vehicle driven by Winfrey.

Claiming he was driving her to the hospital, Winfrey pointed the gun at the now conscious victim each time she tried to raise her head to determine their location. He in fact drove her to his home, where he attempted to treat her wounds. Following on-scene interviews with the witnesses in the other vehicles, an officer pursued leads from the tag number and soon arrived at Winfrey's home, where he found the vehicle's engine still warm from the trip and in which vehicle's front seat he could see an empty shell casing. When backup arrived, the officer with the other police knocked repeatedly on the front door, announcing each time that they were police and intended to enter forcibly if the door was not opened. Winfrey stayed quiet, insisting to the victim that she do likewise. Police broke down the door and found the couple in the bedroom, where the bleeding and upset victim repeatedly expressed gratitude for the witnesses who had called for police. Retrieving the handgun from under the bed (where the victim indicated Winfrey had hidden it), police arrested Winfrey.

---

[5] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) *Kidnapping.* Winfrey first argues that because the victim willingly entered the vehicle at the beginning of the evening, no evidence showed that the victim was held against her will, and thus no evidence supported a finding of kidnapping. See OCGA § 16-5-40 (a) (kidnapping is when one abducts a person and holds her against her will). However, the evidence amply showed that thereafter Winfrey held a gun to her face and forced her to drive with him to a remote area, where she became so desperate to escape that she jumped from a moving vehicle and suffered injuries. He then shot at her, striking her toe. Combined with his dragging her back into the vehicle and forcing her at gunpoint to accompany him back to and to stay in his home, this evidence more than sufficed to sustain the kidnapping with bodily injury conviction. See *Mullins v. State.*[7]

(b) *Aggravated assault.* Claiming that his own testimony showed that he did not shoot toward the victim but merely accidentally fired the gun, Winfrey argues that no evidence supported the aggravated assault conviction. This not only mischaracterizes Winfrey's testimony (in which he actually stated that he fired and emptied the gun out his window *before* the victim jumped from the car), but it is irrelevant to this enumeration, as evidence from the State showed that he intentionally fired at and struck the victim. The jury (not this Court) resolves conflicts in the evidence.

2. Winfrey claims that the court erred in admitting the handgun without a search warrant. But Winfrey "fail[s] to provide any legal argument or citations of authority in support of this claimed error and thus has abandoned this enumeration on appeal." *Daly v. State.*[8] See Court of Appeals Rule 25 (b) (2). Nor did Winfrey object to the handgun when it was offered into evidence, thus waiving the issue. See *West v. State*[9] ("[b]ecause defense counsel failed to object when evidence of the handgun was introduced, this issue was waived").

3. Winfrey complains that the court allowed a pathologist (as opposed to a physician who generally treated live patients) to testify as an expert witness on whether, based on his examination soon after the incident, the holes in the victim's footwear and the injury to her toe were caused by a bullet. We hold that the trial court did not abuse its discretion in allowing this testimony from a pathologist, who had experience in inspecting gunshot wounds on people and in inspecting gunshot holes in clothing and footwear. See *Hall v. State*[10] ("[a]n expert witness is one who from education, training or experience has

---

[7] *Mullins v. State*, 280 Ga. App. 689, 690 (1) (634 SE2d 850) (2006).

[8] *Daly v. State*, 285 Ga. App. 808, 809 (2) (648 SE2d 90) (2007).

[9] *West v. State*, 265 Ga. App. 339, 341 (3) (593 SE2d 874) (2004).

[10] *Hall v. State*, 261 Ga. 778, 782 (7) (a) (415 SE2d 158) (1991).

peculiar knowledge concerning some matter of science or skill to which his testimony relates").

4. Winfrey contends that the prosecution failed to give timely notice (as required by former OCGA § 17-10-2 (a)) of its intent to use Winfrey's prior felonies during sentencing to seek recidivism punishment under OCGA § 17-10-7. However, Winfrey failed to object to the evidence of prior felonies, thus waiving the issue. See *Swain v. State.*[11] Moreover, the record reflects that Winfrey received notice just before jury selection. "This Court has previously held that notice received prior to the jury's being sworn is sufficient to satisfy the requirement of the statute." (Punctuation omitted.) *Davis v. State.*[12]

5. Winfrey argues that the court erroneously failed to instruct the jury on the doctrine of accident and on the concept that a person who willingly gets into a car cannot later claim to have been kidnapped. We discern no error.

Regarding an instruction on the doctrine of accident (which Winfrey claims would have exonerated him from the aggravated assault charge), we note that Winfrey did not request such an instruction. "This court has held that where there has been no written request to charge, failure to give the charge is not error." (Punctuation omitted.) *Curtis v. State.*[13] Although a trial court must give an unrequested charge on a defendant's sole defense, id. at 302 (2), the record here shows that accident was by no means Winfrey's sole defense to the aggravated assault charge. Rather, he testified that he shot and emptied the gun out his window *before* the victim jumped from the car. Thus, his own testimony showed that he was denying that any assault occurred, for he allegedly shot the gun in a manner and at a time when the victim could not have perceived a threat from the shots nor could have been struck by one of the bullets. There is no testimony that he "accidentally" shot toward the victim or that he "accidentally" hit her with a bullet. A charge on accident, even under his theory, would have been inappropriate, and in any case would not have represented his only defense. Accordingly, the court did not err in failing to give such a charge. See id.

Regarding his claim that the court should have instructed the jury that getting into a car willingly precluded a finding that a kidnapping thereafter occurred, we hold that such is simply not the law, as an abduction and holding against one's will can certainly take place thereafter. See *Mullins,* supra, 280 Ga. App. at 690 (1).

---

[11] *Swain v. State,* 268 Ga. App. 135, 138 (2) (601 SE2d 491) (2004).

[12] *Davis v. State,* 244 Ga. App. 715, 717 (2) (536 SE2d 603) (2000).

[13] *Curtis v. State,* 285 Ga. App. 298, 301-302 (2) (645 SE2d 705) (2007).

6. Finally, Winfrey argues that the court clearly erred in finding that he did not carry his burden of showing ineffective assistance of counsel at the motion for new trial hearing. Specifically, he claims that he showed his counsel acted ineffectively when counsel (i) failed to object to the lack of a search warrant when the police entered his house and discovered the gun under his mattress, (ii) did not explain to Winfrey the potential consequences of the recidivist notice received from the State, and (iii) failed to request a jury charge on the doctrine of accident. We hold that these alleged instances of ineffective assistance were either waived or lacked merit.

> The burden of establishing the ineffective assistance of trial counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different.

*Wallace v. State.*[14] We uphold the trial court's findings of fact in this regard unless they are clearly erroneous. *Johnson v. State.*[15]

(a) *Failure to object to evidence obtained without search warrant.* Nowhere in his motion for new trial or in the hearing thereon did Winfrey mention any ineffective assistance claim arising out of his attorney's failure to object to the handgun on the basis that it was obtained without a search warrant. "The failure to raise this specific ground below is a procedural bar to raising that issue now. Accordingly, this specific claim of ineffective assistance of counsel has been waived." (Citations, punctuation and footnotes omitted.) *Phillips v. State.*[16]

(b) *Failure to explain consequences of recidivist notice.* Winfrey then complains that since his counsel did not receive the notice of the State's intent to seek recidivist punishment until just before voir dire, counsel did not have time to adequately explain to Winfrey the ramifications thereof. Beyond the fact that Winfrey presented no evidence (either from himself or his trial counsel) on what explanation was or was not given, the trial transcript reflects that the court specifically inquired whether counsel had explained the recidivist notice to Winfrey, to which counsel responded, "Yes, sir." The court continued, "So he understands what — what that all means?," to

---

[14] *Wallace v. State*, 272 Ga. 501, 503-504 (3) (530 SE2d 721) (2000).

[15] *Johnson v. State*, 281 Ga. 770, 772 (2) (642 SE2d 827) (2007).

[16] *Phillips v. State*, 284 Ga. App. 224, 231 (4) (a) (644 SE2d 153) (2007).

which counsel responded, "Yes, Your Honor." Thus, the uncontradicted evidence belies Winfrey's bald assertion that an insufficient explanation was given.

(c) *Failure to request jury charge on accident.* Winfrey then claims that his counsel erred in failing to request a jury charge on accident. However, as set forth above, Winfrey's own testimony that he fired and emptied the gun out his window *before* the victim jumped from the car is inconsistent with a defense that he "accidentally" fired at her. Thus, an "accident" charge would have been inappropriate. Indeed, his counsel may have testified that this is why he did not request such a charge, but Winfrey chose not to call his counsel to the stand during the hearing on the motion for new trial. Without such testimony, it is extremely difficult to overcome the presumption that counsel's conduct fell within the range of reasonable professional conduct. *Morgan v. State.*[17] Indeed, "[b]ecause his trial attorney did not testify on the motion for new trial, [Winfrey] made no affirmative showing that the purported . . . deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy." (Punctuation omitted.) Id.

We discern no error in the trial court's conclusion that Winfrey failed to carry his burden of proving his ineffective assistance claim.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED JULY 9, 2007.

*Sherry T. Barnes*, for appellant.

*Daniel J. Craig, District Attorney, Madonna M. Little, Assistant District Attorney*, for appellee.

---

[17] *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002).